# **<u>EXHIBIT B</u>**

COMMONWEALTH OF MASSACHUSETTS

Barnstable ss.                          HOUSING COURT DEPARTMENT
                                        Southeast DIVISION


**Rebecca McCrensky**
    PLAINTIFF(S)

vs.

**Katherine Flanders**
    DEFENDANT(S)

<u>**VERIFIED COMPLAINT, and Demand for Jury Trial**</u>

PARTIES

1. The Plaintiff, Rebecca McCrensky, is an individual who works at 248 Mill Road, Apt #3, Chelmsford, MA, and at all times relevant hereto was the tenant at 77 Sparks Ave. Nantucket, MA 02554.

2. The Defendant, Katherine Flanders Borden, is an individual whose mailing address is PO Box 1065, Pepperell, MA 01463 and at all times relevant hereto was the owner of property rented to Plaintiff at 77 Sparks Avenue Nantucket, MA 02554.


**JURISDICTION AND VENUE**

3. The property at issue in this complaint is located at 77 Sparks Avenue, Nantucket, MA 02554.

4. The property is owned by Defendant (landlord) and was rented to Plaintiff (tenant) for a three month term, July 1- September 30, 2019.


**FACTS COMMON TO ALL COUNTS**

5. On June 28th, 2019 Rebecca McCrensky (hereinafter Plaintiff) entered into a lease agreement with Katherine F. Borden (hereinafter Defendant) (See Exhibit 1: Lease Agreement).

6. This Lease agreement was a three month term lease to rent the property located at 77 Sparks Avenue Nantucket, MA 02554

7. The property located at 77 Sparks Avenue Nantucket, MA 02554 included two units.

8. Unit A is described as a one bedroom, one bathroom unit with a full kitchen.

9. Unit B is described as a three bedroom, 2.5 bathroom unit with a full kitchen.

10. The monthly rent for both units was agreed upon at $11,250.00

11. Defendant required the rent for the entirety of the lease and security deposit to be paid upfront, and it was due 24 hours after the execution of the lease agreement.

12. Plaintiff's check for $36,250.00 was deposited into Defendant's Nantucket Bank Account on July 1, 2019.

13. The Defendant did not provide the account transfer information to the Plaintiff required by law.

14. The Defendant has not returned the security deposit to the Plaintiff nor provided her with the interest required by law, nor provided her with an itemized statement of deductions against the security deposit, as required by the statute if the Defendant claims to have withheld a portion of the security deposit legally.

15. The property was advertised as newly remodeled with all modern stainless steel appliances, along with a full bathroom and laundry area in the basement. (See Exhibit 2: Property Listing)

16. Neither Plaintiff nor her husband were allowed to see the basement area prior to moving into the property.

17. The shower in Unit A had a large hole in the wall which leaked water out of the side, without proper bathroom ventilation causing mold to grow. (See Exhibit 3: Photographs of Unit A Bathroom)

18. One of the "full bathrooms" in Unit B did not have a working shower.

19. The shower did not have a door on the bathroom and was used as storage for Defendant's items (See Exhibit 4: Photographs of Unit B Shower and "Bathroom").

20. The toilet for the "full bathroom" in Unit B was a toilet located in a closet in the basement. (See Exhibit 4)

21. During the first five days of the lease (July 1, 2019 - July 5, 2019) Plaintiff and her husband commuted from their home in Chelmsford to Nantucket to open their new business on Nantucket.

22. On July 5, 2019 Plaintiff began settling into the property at 77 Sparks Avenue Nantucket, MA 02554.

23. When Plaintiff opened the cabinets in the kitchen of Unit B, she found mice droppings, insects and rotten food that had expiration dates dating back to 2015. (See Exhibit 5: Photographs from the kitchen).

24. Plaintiff paid for a professional cleaning company to clean the entire property to make the property livable.

25. The washing machine and dryer were both not working properly when Plaintiff moved into the property.

26. On July 12, 2019, Plaintiff attempted to use the gas range/stove in Unit B. The burner would not ignite.

27. Plaintiff texted Defendant on July 12, 2019 to inform her that the gas stove was not working. (See Exhibit 6: Text Messages).

28. Defendant admitted to the fact that she was aware that the gas stove was not working, contradicting her property listing that the home was in full working condition, newly remolded with stainless steel appliances.  (See Exhibit 6: Text Messages).

29. On July 13, 2019 Plaintiff attempted to cook on the electric stove, it made a loud noise and a white flame shot out of the top of the stove. (See Exhibit 7: Image of Electric Stove)

30. The Nantucket Fire Department inspected and confirmed an explosion occurred on the electric range in Unit A.

31. Plaintiff informed Defendant that she was afraid for her safety using either stove on the property on July 15, 2019.

32. On July 17, 2019 Defendant responded by sending a used toaster oven and hot plate from one of her other properties.

33. A technician from Yates Gas confirmed that the gas oven needed to be shut down as well as three of the five burners due to damage from mice eating the wires.

34. Without the use of a stove Plaintiff and her husband were forced to dine out every night.

35. Defendant refused to make repairs and stated that she rented the property "as-is" which safeguarded her from having to make repairs. (See Exhibit 8: Text Messages).

36. On July 23, 2019 Plaintiff filed a complaint intake form to have the Nantucket Board of Health inspect the property.

37. The Nantucket Board of Health inspected the property on July 26, 2019 confirming multiple violations, including but not limited to:

   a. Electric oven/range needs to be repaired or replaced

   b. Install missing screens in windows and doors

   c. Install smoke detectors/ carbon monoxide detectors in units

   d. Fix basement external door and add lock

   e. Add ventilation to first floor bathroom and 2nd floor ½  bathroom

   f. Install external light for home.

      (See Exhibit 9: Nantucket Board of Health First Inspection report).

38. Throughout the entirety of the lease the following items were never fixed:

    a.  Gas oven Range was never repaired or replaced.

    b.  Missing screens in windows and doors were never replaced.

    c.  Smoke detectors and carbon monoxide detectors were replaced but never worked due to unfixed leak in the roof shorting out detectors.

    d.  Ventilation was never added to either the first or second floor bathrooms. (See Exhibit 10: Nantucket Board of Health 2nd 3RD and 4th Inspections).

39. Due to the lack of proper ventilation in the bathrooms and the laundry room, mold developed in various areas of the house. (See Exhibit 11: Photographs of mold).

40. Defendant continued to avoid making necessary repairs claiming that she rented the property "as is" and that excused her from making any repairs. (See Exhibit 12: Email to Kathy LaFavre)

41. After Plaintiff contacted the Nantucket Board of Health Defendant retaliated by threatening to evict them. (See Exhibit 13: Text Messages)

42. Defendant did not make good faith attempts to fix the ongoing health and safety issues.

43. Defendant continuously asked Plaintiff and her husband to meet contractors and repair men.

44. Defendant instructed her repairman and realtor to enter the property without notifying Plaintiff in advance.

45. Over the course of the summer Plaintiff had the property professionally cleaned in order to attempt to alleviate the mouse and bug infestation.

46. On the last day of the lease Plaintiff left the keys for the landlord and locked the door to the property.

47. The property was left in better condition that it was received.

48. Plaintiff sent Defendant a text message with my mailing address to send a check for the $2500.00 security deposit. (See Exhibit 14: Text Messages).

49. Plaintiff did not receive an answer to the text message requesting my security deposit back.

50. Plaintiff has not received the security deposit back.

51. The Nantucket Inspectional Services Department again inspected the Apartment twice and cited the defendants for violations of the State Building Code, and ordered the defendants, inter alia, that within 14 days all repairs must be made.

52. The defendants negligently failed to repair properly the defects which she was cited for and failed to provide a safe environment for Plaintiff.

53. The plaintiff also notified the Defendant of numerous other defective conditions in the Apartment, many of which constituted violations of the State Sanitary Code and/or the State Building Code, and all of which materially decreased the rental value of the Apartment.

54. The plaintiff and the defendants continued to communicate during July, August and September 2019, concerning the condition of the Apartment, but the defendant negligently continued to fail to repair properly the defects.

55. Plaintiff hired counsel to draft a 93A demand (See Exhibit 15: 93A Demand)

56. Defendant received the 93A demand by certified first class mail, return receipt on September 7, 2019 and electronically on October 25, 2019.

57. Defendant has failed to respond to the 93A demand.

## COUNT I (NEGLIGENCE)

58. The plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth fully herein.

59. The defendants owed a duty to the plaintiff to exercise reasonable care and to take reasonable measures to maintain the Premises and the Apartment in a condition which was habitable and safe for human occupancy so as to ensure the safety and security of tenants and other persons lawfully present upon the Premises.

60. The defendants breached the duty of care which they owed to the plaintiff by their failure to exercise reasonable care and to take reasonable measures to maintain the Premises and the Apartment in a condition which was habitable and safe for human occupancy and by failing reason-ably to protect the safety and security of the plaintiff as their tenant and a person who lawfully was present upon the Premises.

61. As a direct and proximate result of the defendants' breach of their duty of care, the plaintiff suffered the damages aforesaid.

## COUNT II (INTERFERENCE WITH QUIET ENJOYMENT)

62. The plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth fully herein.

63. The defendants' aforesaid conduct violated the covenant of quiet enjoyment owed by the defendants to the plaintiff, in violation of G.L. c. 186, §14.

64. The damages suffered by the plaintiff were the direct, foreseeable and immediate result of the defendants' aforesaid violations.

## COUNT III (BREACH OF THE IMPLIED WARRANTY OF HABITABILITY)

65. The plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth fully herein.

66. The defendants impliedly warranted to the plaintiff that the Premises and the Apartment would be habitable and safe and at a minimum would satisfy the minimum standards of habitability set forth in the State Sanitary Code and the State Building Code.

67. The defendants breached the implied warranty of habitability which they had provided to the plaintiff, as aforesaid.

68. As a direct and proximate result of the defendants' breach of the implied warranty of habitability, the plaintiff suffered the damages aforesaid.

## COUNT IV (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

69. The plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth fully herein.

70. The conduct of the defendants towards the plaintiff, set forth above, constitutes extreme and outrageous conduct beyond all bounds of decency which is utterly intolerable in a civilized society.

71. As a direct and proximate result of the defendants' and the Trust's tortuous conduct, the plaintiff suffered the damages aforesaid.

## COUNT V (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

72. The plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though they were set forth fully herein.

73. The conduct of the defendants towards the plaintiff, set forth above, caused the plaintiff to suffer emotional distress accompanied and manifested by physical symptoms.

74. As a direct and proximate result of the defendants' tortuous conduct, the plaintiff suffered the damages aforesaid.

## COUNT VI (VIOLATIONS OF SECURITY DEPOSIT LAWS)

75. The plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs, as though they were fully set forth herein.

76. The defendant violated the provisions of Massachusetts laws regulating the collection, maintenance, transfer, and return of security deposits, in violation of G.L. c. 186, §15B, 940 CMR

3.17, and other statutes and regulations promulgated to provide protection for the public health, safety or welfare.

77. The defendant's failure to comply with the law subjects the defendant to statutory penalties of three times the security deposit plus interest at the rate of five (5%) percent per annum, plus court costs, plus reasonable attorney's fees.

78. As a direct and proximate result of the defendant's violations of statute, the plaintiff suffered damages.

## COUNT VII (VIOLATION OF G.L. c. 93A)

79. The plaintiff adopts, repeats, realleges and incorporates by reference the allegations set forth in the preceding paragraphs, as though they were fully set forth herein.

80. The defendant was engaged in the trade or business of providing services as a landlord by letting residential apartment space for a fee.

81. By conducting its business with respect to the plaintiff as aforesaid, the defendant has engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of [its] trade or commerce [which have been] declared unlawful" by G.L. c. 93A, §2(a).

82. The defendant has violated the following Regulations promulgated by the Attorney General pursuant to G.L. c. 93A, §2(c) and found at 940 CMR §3.00, et. seq., the violation of each of which constitutes an unfair or deceptive act or practice in violation of G.L. c. 93A, §2(a), *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 775 (1980):

   a. 940 CMR 3.17(1)(a)(1): by "rent[ing] a dwelling unit which, at the inception of the tenancy ... contains a condition which amounts to a violation of law which may endanger or materially impair the health, safety, or well-being of the occupant";

   b. 940 CMR 3.17(1)(a)(2): by "rent[ing] a dwelling unit which, at the inception of the tenancy ... is unfit for human habitation";

   c. 940 CMR 3.17(1)(b)(1): by "[f]ail[ing], during the terms of the tenancy, after notice is provided in accordance with M.G.L. c. 111, s. 127L, to ... remedy a violation of law in a dwelling unit which may endanger or materially impair the health, safety, or well-being of the occupant";

   d. 940 CMR 3.17(1)(b)(2): by "[f]ail[ing], during the terms of the tenancy, after notice is provided in accordance with M.G.L. c. 111, s. 127L, to ... maintain the dwelling unit in a condition fit for human habitation";

7

e. 940 CMR 3.17(1)(c): by "[f]ail[ing] to disclose to a prospective tenant the existence of any condition amounting to a violation of law within the dwelling unit of which the owner had knowledge or upon reason-able inspection could have acquired such knowledge at the commencement of the tenancy";

f. 940 CMR 3.17(1)(d): by "[r]epresent[ing] to a prospective tenant that a dwelling unit meets all requirements of law when, in fact, it contains violations of law";

g. 940 CMR 3.17(1)(i): by "[f]ail[ing] to comply with the State Sanitary Code or any other law applicable to the conditions of a dwelling unit within a reasonable time after notice of a violation of such code or law from the tenant or agency";

h. 940 CMR 3.17(3)(b)(3): by "enter[ing] into a written rental agreement which fails to state fully and conspicuously, in simple and readily understandable language ... [t]he amount of the security deposit, if any; and that the owner must hold the security deposit in a separate, interest-bearing account and give to the tenant a receipt and notice of the bank and account number; that the owner must pay interest, at the end of each year of the tenancy, if the security deposit is held for one year or longer from the commencement of the tenancy; that the owner must submit to the tenant a separate written statement of the present condition of the premises, as required by law, and that, if the tenant disagrees with the owner's statement of condition, he/she must attach a separate list of any damage existing in the premises and return the statement to the owner; that the owner must, within thirty days after the end of the tenancy, return to the tenant the security deposit, with interest, less lawful deductions as provided in M.G.L. c. 186, s. 15B; that if the owner deducts for damage to the premises, the owner shall provide to the tenant, an itemized list of such damage, and written evidence indicating the actual or estimated cost of repairs necessary to correct such damage; that no amount shall be deducted from the security deposit for any damage which was listed in the separate written statement of present condition or any damage listed in any separate list submitted by the tenant and signed by the owner or his agent; that, if the owner transfers the tenant's dwelling unit, the owner shall transfer the security deposit, with any accrued interest, to the owner's successor in interest for the benefit of the tenant";

i. 940 CMR 3.17(4)(b): by "fail[ing] to give to the tenant a written receipt indicating the amount of rent in advance for the last month of occupancy, and a written receipt indicating the amount of the security deposit, if any, paid by the tenant, in accordance with M.G.L. c. 186, s. 15B";

j.  940 CMR 3.17(4)(c): by "fail[ing] to pay interest at the end of each year of the tenancy, on any security deposit held for a period of one year or longer from the commencement of the term of the tenancy, as required by M.G.L. c. 186, s. 15B";

k.  940 CMR 3.17(4)(d): by "fail[ing] to hold a security deposit in a separate interest-bearing account or provide notice to the tenant of the bank and account number, in accordance with M.G.L. c. 186, s. 15B";

l.  940 CMR 3.17(4)(e): by "fail[ing] to submit to the tenant upon receiving a security deposit or within ten days after commencement of the tenancy, whichever is later, a separate written statement of the present condition of the premises in accordance with M.G.L. c. 186, s. 15B";

m.  940 CMR 3.17(4)(f): by "fail[ing] to furnish to the tenant, within 30 days after the termination of occupancy under a tenancy-at-will or the end of the tenancy as specified in a valid written rental agreement, an itemized list of damage, if any, and written evidence indicating the actual or estimated cost of repairs necessary to correct such damage, in accordance with M.G.L. c. 186, s. 15B";

n.  940 CMR 3.17(4)(g): by "fail[ing] to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting any sums in accordance with M.G.L. c. 186, s. 15B, together with interest, within thirty days after termination of occupancy under a tenancy-at-will agreement or the end of the tenancy as specified in a valid written rental agreement";

o.  940 CMR 3.17(4)(h): by "deduct[ing] from a security deposit for any damage which was listed in the separate written statement of present condition given to the tenant prior to execution of the rental agreement or creation of the tenancy, or any damages listed in any separate list submitted by the tenant and signed by the owner or his agent";

p.  940 CMR 3.17(4)(j): by "fail[ing], upon transfer to him of a dwelling unit for which a security deposit is held, to assume liability for the retention and return of such security deposit, regardless of whether the security deposit was, in fact, transferred to him by the transferor of the dwelling unit, in accordance with M.G.L. c. 186, s. 15B";

q.  940 CMR 3.17(4)(k): by "otherwise fail[ing] to comply with the provisions of M.G.L. c. 186, s. 15B";

83. The defendant's violations of G.L. c. 93A constituted willful and knowing violations, justifying an award of punitive damages.

9

84. As a direct and proximate result of the defendant's violations of G.L. c. 93A, the plaintiff sustained the damages aforesaid.

85. The plaintiff tendered a written demand for relief upon the defendant in accordance with G.L. c. 93A, §9, a copy of which is annexed hereto as Exhibit "1".

86. The defendant acknowledged receipt and failed to respond to the plaintiff's written demand for relief.

87. The defendant's refusal to respond was not a good faith offer of settlement within the meaning of G.L. c. 93A, §9 but constituted a refusal to grant reasonable relief upon demand, which was made in bad faith with knowledge or reason to know that the acts or practices complained of violated G.L. c. 93A, and which merit the imposition of multiple damages.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully demands judgment against the defendant, in an amount to be determined by a jury to serve as compensatory damages, plus a multiple of that amount as permitted by statute and common law to serve as punitive and/or as multiple damages in addition to the compensatory damages, plus costs, interest, reasonable attorney's fees where allowed by law, and such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

THE PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL COUNTS OF HER COMPLAINT.

Respectfully Submitted,
Rebecca McCrensky
By her Attorney,

/s/ Jenny L. Margeson
Jenny L. Margeson, Esq.
Office of Jenny L. Margeson, P.C.
Cranberry Square
434 Route 134, Suite A2
South Dennis, MA 02660
BBO#: 679611
Phone: (508) 237-7840
Email: jenny@jennymargesonlaw.com

## EXHIBIT 1 – LEASE AGREEMENT

**Nantucket Island Summer Lease Agreement:**
**for 77 Sparks Avenue Nantucket, MA 02554**

1. Parties: The parties to this agreement are the Landlord:  Katherine F. Borden Address:
77 Sparks Avenue Nantucket, Ma 02554 phone: 508-901-9143
The tenant: Rebecca McCrensky 248 Mill Road #3 Chelmsford, MA 01824 (978) 533-9386

2. Property: Landlord rents to Tenants a seasonal summer rental located at:
Address: 77 Sparks Ave. Nantucket Island, MA 02554

3. The term: of this lease shall be a seasonal/summer 3 month rental from July 1st, 2019 through Sept 2019.

4. The rent shall be the sum of $11,250 per month for the 3 month summer season (July 1st through Sept 30th, 2019) for a total of $33,750 paid by ~~wire transfer~~ within 24 hours of execution of lease.
*Check or bank deposit*

5. The home is furnished and needs to be left in "as is" condition.

6. Security Deposit: Upon the execution of this Agreement, Tenant shall also deposit a security
deposit check for $500 to Cape Cod Bank which must be deposited before move-in. Receipt of which is acknowledged by
the Landlord, as security for any damage caused to the Premises during the term of the lease In accordance with ALM GL
ch. 186, § 15B, such deposit received shall be held in a separate, interest-bearing account in a bank, located within the
Commonwealth. Such deposit shall be returned to the Tenant less any set off for damages, breach of contract or any
unpaid rent to the Premises upon the termination of this Agreement.

7. Utilities TENANT agrees to pay Electricity and Trash/Recycling Removal. LANDLORD agrees to pay Water, Sewer, gas
and oil.

8. Use of Property and Permission: Tenant shall use the property for residential purposes only with a reasonable amount of
occupants. Tenant agrees not to engage in or permit any household members, relatives, guests, invitees or agents to
engage in any unlawful use of the dwelling unit, common areas or grounds. Permission for Landlord to Enter Unit: Tenant
agrees to allow landlord or its agents to enter the dwelling upon reasonable advance notice in order to inspect the
premises, to make repairs or to show the premises to prospective purchasers, mortgagers or their agents. The Tenant
agrees to leave lockbox with spare key on side door and will allow a showing of the home with up to 24 hours notice.
Landlord may also enter the premises without prior consent in case of emergency, and as otherwise permitted by law or
court order. *Tenant maintains the right to sublet up to a reasonable occupancy.*

9. Tenant's Duty to Maintain Premises The Tenant agrees to rent the property in "as is"
condition and shall maintain the premises in a clean and neat condition and at all times comply
with an occupant's obligations under Article II of the Massachusetts State Sanitary Code.

10. Waste of Utilities Tenant shall make every reasonable effort to conserve the use of utilities
supplied and paid for by the Landlord and shall not waste the same.

11. Damage: Tenant shall use all appliances, fixtures and equipment in a safe manner and only
for the purposes for which they are intended and shall not litter, destroy, deface, damage or
remove any part of the dwelling unit, common areas or grounds. Tenant shall pay amounts due
for repairs for property damage, reasonable wear and tear excepted, caused by the intentional
or negligent conduct of Tenant, a member of the Tenant's household, relatives, invitees, guests
or agents upon receipt of a bill from Landlord. The written bill shall include items of damage, the
corrective action taken and the cost thereof.

12. Alterations No substantial alterations, addition or improvement shall be made by Tenant in
or to the dwelling unit without the permission of Landlord in writing. Such consent shall not be

## EXHIBIT 1 – LEASE AGREEMENT CONT.

unreasonably withheld, but may include the Tenant's agreeing to restore the dwelling unit to its prior condition before moving out.

13. Locks: Tenant shall not change, alter, replace or add new locks without written consent of Landlord. Any locks so permitted to be installed shall become property of the Landlord and shall not be removed by Tenant. The Tenant shall promptly give a duplicate key to any such changed, altered, replaced or new lock to Landlord.

14. Noise: Tenant agrees not to allow on his/her premises any excessive noise or other activity which disturbs the peace and quiet of other tenants in the building. Landlord agrees to prevent other tenants and other persons in the building or common areas from similarly disturbing Tenant's peace and quiet.

15. Termination: Upon termination of this agreement, Tenant shall vacate the premises, remove all personal property belonging to him/her and leave the premises as clean as she/he found them, and return all keys to Landlord upon vacating. The Tenant agrees that any personal property left in or about the premises after the Tenant has vacated shall be considered abandoned property, and the Landlord may sell or otherwise dispose of same without liability to the Tenant.

16. Notification of Termination Landlord shall not terminate this lease except for serious or repeated breach of tenant's obligations hereunder. Notwithstanding the foregoing, the Landlord may immediately terminate this Lease for any act or conduct of the Tenant, household member or guest which entitles the Landlord to evict or enjoin the Tenant under Massachusetts General Laws, Chapter 139, Section19.

17. WHEREFORE, We, the undersigned, agree to this Lease, by signing this lease and returning this lease electronically via email or fax.

LANDLORD:
Katherine F. Borden

Signature

Date Signed: 6/28/2019

TENANT:
Rebecca McCrensky

Signature

Date Signed:
6/28/19

## EXHIBIT 2 – PROPERTY LISTING



**Zillow**   ♡ Save   ↗ Share   •••More

**$1,495,000**   4 bd | 4 ba | 1,991 sqft

77 Sparks Ave, Nantucket, MA 02554

**Contact Agent**

Overview   Facts and features   Home value   Price and tax his >

| Time on Zillow | Views | Saves |
| --- | --- | --- |
| 145 days | 338 | 1 |

77 Sparks Avenue has dynamic investment potential. Centrally located, this beautiful four bedroom single-family home could be used in a variety of ways. The first floor features a newly remodeled kitchen with all modern stainless steel appliances, dishwasher and gas range oven, multi-use mudroom, bathroom and bedroom. The upstairs has 2 lovely bedrooms, a half bathroom and plenty of closet space. The first floor also has self contained separate living quarters which includes one bedroom, a romantic wood burning fireplace, large office and could be rented to a professional or used as a den. The basement currently has a laundry area, a full bathroom, 2 multi-use rooms and outside

**Zillow**   ♡ Save   ↗ Share   •••More

**$1,495,000**   4 bd | 4 ba | 1,991 sqft

77 Sparks Ave, Nantucket, MA 02554

**Contact Agent**

Overview   Facts and features   Home value   Price and tax his >

entrance. This property can be combined with the purchase of the adjacent lot(lot 2 on Plot Plan) to expand income potential even further.

Read less

**Listing Agent**

Stephen Maury
Congdon & Coleman Real Estate

## Facts and features

13

EXHIBIT 3 – PHOTOS OF UNIT A BATHROOM



EXHIBIT 4 – UNIT B BATHROOM SHOWER



EXHIBIT 4– UNIT B "BATHROOM"



EXHIBIT 5 – UNIT B KITCHEN



EXHIBIT 5 CONT. – UNIT B KITCHEN



EXHIBIT 7 CONT. – UNIT B KITCHEN



EXHIBIT 7 CONT. – UNIT B KITCHEN



EXHIBIT 6 – TEXT MESSAGES

 

**Maybe: Kate Flanders Borden >**



Fri, Jul 12, 7 29 PM

code is 228 I am so sorry he
told me it was working my
apologies

I apologize everything is not
perfect. I've been in an abusive
marriage please don't tell
anyone am trying to stay alive
and in survival mode I
apologize

Did you try all of the burners of
the stove? I know two were
broken bur others should work
if none work ots gas Yates

Is the company

EXHIBIT 7 – ELECTRIC STOVE



EXHIBIT 8 – TEXT MESSAGES



Maybe: Kate Flanders Borden ›

[illegible text] ... these ... [illegible] ... worked. When you tried to use it and I finished driving safely using it. When we're ... [illegible] ... Washer ... [illegible] ... dryer does not work ... so we are still not even able to clean our sheets.

When I paid you the $36k, I understood the place was not modern but I assumed it was in working condition. It is currently not livable as a 3 month rental. I would like 25% of the rent back for July and some assurance these things will be fixed for August and September.

I understand you are going through a tough time but it's not legal to rent a place under these conditions.

Thanks,
Rebecca

EHIBIT 8 -- TEXT MESSAGES



Maybe: Katherine Flanders ›

I really don't want to have to contact the state but I will Kate. This is unacceptable. We could have been seriously hurt by these issues and got no heads up and you knew the burners weren't working. Please just do the right thing here or I will escalate this to the state.

You are welcome to contact the state Rebecca I explained in the lease that the rental was "as is"

24

## EXHIBIT 9 – FIRST BOARD OF HEALTH INSPECTION



### NANTUCKET HEALTH DEPARTMENT
3 EAST CHESTNUT STREET
NANTUCKET, MASSACHUSETTS 02554
Telephone 508.228.7200
Tele fax 508.325.6117

July 26, 2019

The Bucko Nominee Trust
PO Box 1065
Pepperell, MA 01463

> RE: Violation of 105 CMR 410.000-Human Habitation Code –77 Sparks Ave, Map 55 Parcel 138.1-front and back units.

Dear Property Owner:

As a result of a complaint received in this office, the above-referenced property was inspected by Art Crowley, Assistant Health Director, Kathy LaFavre Health Inspector, and Sean Mitchell, Fire Prevention Officer, for the Town of Nantucket's Health and Fire Departments, on July 25, 2019 at 2:00 p.m. and found violations of Chapter II of the State Sanitary Code 105 CMR 410.00 that are in need of correction.

## VIOLATION

1. **Electric Stove is not working which is a violation of 105 CMR 410.351(A) which states in part...**

410.351: Owner's Installation and Maintenance Responsibilities

> The owner shall install or cause to be installed, in accordance with accepted plumbing,
> gas fitting and electrical wiring standards, and shall maintain free from leaks, obstructions or
> other defects, the following:

(A) all facilities and equipment which the owner is or may be required to provide including, but not limited to, all sinks, washbasins, bathtubs, showers, toilets, water heating facilities, gas pipes, heating equipment, water pipes, owner installed stoves and ovens, catch basins, drains, vents and other similar supplied fixtures; ...

Repair or replace electric stove – front unit-start process within 24-48 hours.

2. **Outside light (Williams Street side entry) not working – which is a violation of 105 CMR 410.253(A) which states in part....**

25

EXHIBIT 9 – FIRST BOARD OF HEALTH INSPECTION



# NANTUCKET HEALTH DEPARTMENT
## 3 EAST CHESTNUT STREET
### NANTUCKET, MASSACHUSETTS 02554
Telephone 508.228.7200
Tele fax 508.325.6117

---

410.253: Light Fixtures Other than in Habitable Rooms or Kitchens

(A) The owner shall provide and so locate electric light switches and fixtures in good working order so that illumination may be provided for the safe and reasonable use of every laundry, pantry, foyer, hallway, stairway, closet, storage place, cellar, porch, exterior stairway and passageway.

Repair or replace outside light.

3.  Smoke/CO units missing – front hall near front bedroom (front unit) and bottom of stairs/outside bathroom (back unit) which is a violation of 105 CMR 410.482 which states in part....

410.482: Smoke Detectors and Carbon Monoxide Alarms

(A) Owners shall provide, install, and maintain in operable condition smoke detectors and carbon monoxide alarms in every dwelling that is required to be equipped with smoke detectors and carbon monoxide alarms in accordance with any provision of the Massachusetts General Laws and any applicable regulations of the State Board of Fire Prevention (527 CMR), State Board of Building Regulations and Standards (780 CMR )...

Replace smoke/CO units (licensed electrician) within 24-48 hours.

4.  Security-locks – the basement door (near washer and dryer) is missing glass/wood panel and is missing a lock which is a violation of 105 CMR 410.480(B) which states in part...

410.480: Locks

The owner shall provide, install and maintain locks so that:

(A) Every dwelling unit shall be capable of being secured against unlawful entry.

(B) Every door of a dwelling unit shall be capable of being secured from unlawful entry.

Repair door and add a lock on the basement door (within 24-48 hours).

5.  Ventilation – missing in 2nd floor half bath and first floor (shower) Bathroom (front unit) – which is a violation of 105 CMR 410.280(A) which states in part....

410.280: Natural and Mechanical Ventilation The owner shall provide for each habitable room, and room containing a toilet, bathtub or shower, ventilation to the outdoors consisting of:

EXHIBIT 9 – FIRST BOARD OF HEALTH INSPECTION



# NANTUCKET HEALTH DEPARTMENT
### 3 EAST CHESTNUT STREET
### NANTUCKET, MASSACHUSETTS 02554
Telephone 508.228.7200
Tele fax 508.325.6117

(A) windows, skylights, doors or transoms in the exterior walls or roofs that can be easily opened to a minimum of 4% of the floor area of that habitable room or room containing a toilet, bathtub or shower, provided, that a skylight which if open exposes the interior of the dwelling to direct rainfall shall not satisfy this requirement ... or

(B) Mechanical ventilation capable of exhausting air at the following rates...

**Ventilation must be added to both bathrooms in the form of a window or mechanical ventilation.**

6.  **Owner's Installation and Maintenance – Shower -** side wall is loose and allows water to accumulate on the floor which is a violation of 105 CMR 410.351(A)- (repair/replace panel); Stoves in both units are broken (repair/replace 24-48 hours) which is a violation of 105 CMR 410.351(A);
Dryer in cellar does not work (repair/replace) which is a violation of 105 CMR 410.351(A); Outlet cover on outlet in living room is missing cover (install cover) which is a violation of 105 CMR 410.351(B);

410.351: Owner's Installation and Maintenance Responsibilities

The owner shall install or cause to be installed, in accordance with accepted plumbing,
gas fitting and electrical wiring standards, and shall maintain free from leaks, obstructions or
other defects, the following:

(A) all facilities and equipment which the owner is or may be required to provide including, but not limited to, all sinks, washbasins, bathtubs, showers, toilets, water heating facilities, gas pipes, heating equipment, water pipes, owner installed stoves and ovens, catch basins, drains, vents and other similar supplied fixtures; the connections to water, sewer and gas lines; the subsurface sewage disposal system, if any; all electrical fixtures, outlets and wiring, smoke detectors and carbon monoxide alarms, and all heating and ventilating equipment and appurtenances thereto; and

(B) all owner-installed optional equipment, including but not limited to, refrigerators, dishwashers, clothes washing machines and dryers, garbage grinders, and submetering devices designed to measure the usage of electricity, gas or water

7.  **Screen Doors/Windows –** Several screens are missing on windows and on 4 doors which is a violation of 105 CMR 410.551(A) and .552(A) which states in part...

410.551: Screens for Windows

The owner shall provide screens for all windows designed to be opened on the first four floors opening directly to the outside from any dwelling unit or room unit provided,

## EXHIBIT 9 -- FIRST BOARD OF HEALTH INSPECTION



# NANTUCKET HEALTH DEPARTMENT
### 3 EAST CHESTNUT STREET
### NANTUCKET, MASSACHUSETTS 02554
Telephone 508.228.7200
Tele fax 508.325.6117

used for ventilation. All new or replacement screens shall be of not less than 16 mesh per square inch.

Said screens: (Kitchen windows (front unit); second floor east bedroom; Master bedroom (rear window); side window – living area (Williams Street))

(1) shall cover that part of the window that is designed to be opened but in no case less than the area as required in 105 CMR 410.280(A); and
(2) shall be tight fitting as to prevent the entrance of insects and rodents around the perimeter.
(3) Expandable temporary screens shall not be deemed to satisfy the requirements of 105 CMR 410.551(1) or (2).

410.552: Screens for Doors

The owner shall provide a screen door for all doorways opening directly to the outside from any dwelling unit or rooming unit where the screen door will be permitted to slide to the side or open in an outward direction, provided, that in an owner-occupied unit, the owner need provide screens only for those doorways used for ventilation. All new or replacement screens in screen doors shall be of not less than 16 mesh per square inch...

Many windows have screens already installed; one door (side right door needs complete screen door; side door near Williams is missing screen portion only; back door missing screen piece only; front door needs screen portion installed - several screens are leaning against the house which may be installed in windows/doors where appropriate.

    8.  Side wooden landing has small crack in one piece of wood which is a violation of 105 CMR 410.500 which states in part...

410.500: Owner's Responsibility to Maintain Structural Elements

Every owner shall maintain the foundation, floors, walls, doors, windows, ceilings, roof, staircases, porches, chimneys, and other structural elements of his dwelling so that the dwelling excludes wind, rain and snow, and is rodent-proof, watertight and free from chronic dampness, weathertight, in good repair and in every way fit for the use intended. Further, he shall maintain every structural element free from holes, cracks....

Repair/replace one piece of wood on side landing (east side).

Observed bags of trash outside the dwelling (side and rear of dwelling). Occupant addressed the trash issue and placed in covered bins which were provided. Violation corrected by occupant-occupant informed of his responsibility to store and dispose of trash properly.

## EXHIBIT 9 – FIRST BOARD OF HEALTH INSPECTION

THE COMMONWEALTH OF MASSACHUSETTS
**TOWN OF NANTUCKET**
**BOARD OF HEALTH**
**HOUSING & HUMAN HABITATION INSPECTION REPORT**

*55/138.1*

Location *77 Sparks Ave, Nul*
Owner *The Bucku Nmahess Trust*
*PO Box 1065 Pepperell, MA 01463*
Occupant *James Broad* Address (if different)

Inspector's Name *Kathy Lenavre, Art Crowley*

map *55*  parcel *138.1*  Date *7/25/19*
phone #                    Time: In *200* Out *245*
type of dwelling:
single family dwelling ☐
multi family dwelling ☑
lodging house ☐
rooming unit ☐
dormitory ☐
other *2 apts.* ☑

Purpose:
Routine ☑
Follow-up ☐
Complaint ☑
Annual ☐
Other ☐

Based on an inspection as dated above, the items checked below indicate violated provisions of 105 CMR 410.00, minimum standards of fitness for human habitation. Descriptions of each item appear on the back of this form. Fines as noted on the inspection form, may be assessed pursuant to Mass. General Laws Chapter 40, Section 21D, and Chapter 1, Article II of the Code of the Town of Nantucket. This report serves as official notice of violated provisions and official notice to correct said violations. ☑ *Kitchen stoves, 100 (A)(2)*

**BATHROOM FACILITIES -**
enter that provide:Dwelling Unit (A)/Rooming Unit (B)

| | | Fino | Code Section |
|---|---|---|---|
| ☐ | 1. toilet with seat | 100 | 150(A)(B) |
| ☐ | 2. wash basin | 100 | 150(A)(B) |
| ☐ | 3. bathtub or shower | 100 | 150(A)(B) |
| ☐ | 4. door | 100 | 150(A) |
| ☐ | 5. accessability | 50 | 150(C) |
| ☐ | 6. smooth/impervious | 50 | 150(D) |
| ☐ | 7. shared facilities | 50 | 151 |
| ☐ | 8. chem. toilets | 100 | 152 |

**WATER - POTABLE - owner shall provide:**

| | | | |
|---|---|---|---|
| ☐ | 9. quantity & pressure | 100 | 180 |
| ☐ | 10. hot water (110-130) | 100 | 190 |

**HEATING FACILITIES - required**

| | | | |
|---|---|---|---|
| ☐ | 11. provided/each room | 200 | 200(A) |
| ☐ | 12. approved heat units | 100 | 200(B) |
| ☐ | 13. temp. requirements | 200 | 201 |
| ☐ | 14. venting of heaters | 100 | 202 |

**LIGHTING AND ELECTRICAL - Habitable Rooms other than kitchens**

| | | | |
|---|---|---|---|
| ☐ | 15. transparent glass | 50 | 250(A) |
| ☐ | 16. electrical outlets (2) | 50 | 250(B) |

**KITCHEN LIGHT AND ELECTRICAL (MINIMUM)**

| | | | |
|---|---|---|---|
| ☐ | 17. one light fixture (min.) | 50 | 251(A) |
| ☐ | 18. two wall outlets | 50 | 251(B) |
| ☐ | 19. transparent glass | 50 | 251(C) |

**BATHROOM LIGHTING (MINIMUM)**

| | | | |
|---|---|---|---|
| ☐ | 20. one light fixture | 50 | 252(A) |

**SWITCHES AND LIGHTING FIXTURES**

| | | | | |
|---|---|---|---|---|
| ☑ | 21. good working cond. | 50 | 253(A) | *outside light* |
| ☐ | 22. common area lights | 50 | 253(B) | |
| ☐ | 23. hallways/3 or more | 50 | 254(A) | |
| ☐ | 24. hallway /2 or less | 50 | 254(B) | |
| ☐ | 25. amperage req. | 50 | 255 | |
| ☐ | 26. temporary wiring | 100 | 256 | |
| ☐ | 27. light obstructions | 50 | 257 | *1st + 2nd FL.* |
| ☐ | 28. exemption<500ft. | 50 | 259 | *bathroom(s)* |

**VENTILATION**

| | | | |
|---|---|---|---|
| ☑ | 29. windows etc. | 50 | 280(A) |
| ☐ | 30. mechanical vents | 50 | 280(B) |
| ☐ | 31. ventilation shutoff | 50 | 281 |

**SEWAGE DISPOSAL**

| | | | |
|---|---|---|---|
| ☐ | 32. system requirement | 200 | 300 |

**INSTALLATION & MAINTANCE OF FACILITIES**
**PLUMBING CONNECTIONS**

| | | | |
|---|---|---|---|
| ☐ | 33. plumbing-kitchen | 100 | 350(A) |
| ☐ | 34. plumbing-toilet | 100 | 350(B) |

**OWNERS INSTALLATION & MAINTENANCE**

| | | | | |
|---|---|---|---|---|
| ☑ | 35. owners requirements | 100 | 351(A) ☑ | *Shower* |
| ☐ | 36. occupants resp. | 100 | 352(A)(B) | *Wall* |

*dryer - stoves outlet cover*

**ASBESTOS**

| | | | |
|---|---|---|---|
| ☐ | 37. good repair | 100 | 353(A) |
| ☐ | 38. repairs-BOH approv. | 200 | 353(B) |
| ☐ | 39. inclosure method | 200 | 353(C) |
| ☐ | 40. removal compliance | 200 | 353(D) |
| ☐ | 41. removal compliance | 200 | 353(F) |
| ☐ | 42. testing-pre removal | 200 | 353(G) |

**METERING OF**
**ELECTRICITY & GAS**

| | | Fino | Code Section |
|---|---|---|---|
| ☐ | 43. owner responsibility | 200 | 354(A)(1)(2) |
| ☐ | 44. separate metering | 200 | 354(C) & 355 |

**SPACE & USE -**
**MINIMUM SQUARE FOOTAGE**

| | | | |
|---|---|---|---|
| ☐ | 45. dwelling unit (gen.) | 300 | 400(A) |
| | 150 sq. ft. first --- 100 sq. ft. each, if >1 | | |
| ☐ | 46. dwelling sleeping | 300 | 400(B) |
| | 70 sq. ft. first --- 50 sq. ft. each, if >1 | | |
| ☐ | 47. rooming-sleeping | 300 | 400(C) |
| | 80 sq. ft. first --- 60 sq. ft. each, if >1 | | |
| ☐ | 48. ceiling height--√7 ft. | 200 | 401(A) |
| ☐ | 49. ceiling height--<5 ft. | 200 | 401(B) |
| ☐ | 50. 1/2 height below gr. | 200 | 402 |

**TEMPORARY HOUSING**

| | | | |
|---|---|---|---|
| ☐ | 51. BOH permission | 300 | 430 |
| ☐ | 52. minimum standards | 200 | 431 |

**EXITS**

| | | | |
|---|---|---|---|
| ☐ | 53. means of egress | 100 | 450 |
| ☐ | 54. egress obstructions | 100 | 451 |
| ☐ | 55. exits conditions | 100 | 452 |

**SECURITY**

| | | | | |
|---|---|---|---|---|
| ☐ | 56. locks | 100 | 400(A)(B)(C)(D)(E) | *Basement Door* |
| ☐ | 57. posting name | 100 | 481 | |
| ☑ | 58. smoke detectors + COs | 200 | 482 (2) | |
| ☐ | 59. emergency lighting | 200 | 483 | |

**MAINTENANCE OF**
**STRUCTURAL ELEMENTS**

| | | | | |
|---|---|---|---|---|
| ☐ | 60. owners resp. | 200 | 500 | *Side landing* |
| ☐ | 61. weathertight windows | 200 | 501(A) | |
| ☐ | 62. weathertight door | 100 | 501(B) | |
| ☐ | 63. walls, floors, ceilings | 100 | 501(C) | |
| ☐ | 64. use of lead paint | 200 | 502 | |
| ☐ | 65. railings-stairways | 50 | 503(A) | |
| ☐ | 66. railings-porch | 50 | 503(B) | |
| ☐ | 67. balusters-6" max. | 50 | 503(C) | |
| ☐ | 68. non-absorb. floors | 50 | 504(A) | |
| ☐ | 69. non-absorb bath walls | 50 | 504(B) | |
| ☐ | 70. non-absorb. shower walls | 50 | 504(C) | |
| ☐ | 71. occupants responsibility | 100 | 505 | |

**INSECTS & RODENTS**

| | | | |
|---|---|---|---|
| ☐ | 72. extermination | 100 | 550(A)(B)(C)(D) |
| ☑ | 73. screen windows | 100 | 651(A) |
| ☑ | 74. screen doors | 100 | 652(A) |
| ☐ | 75. screen inst. dates | 100 | 553 |

**GARBAGE & RUBBISH**

| | | | |
|---|---|---|---|
| ☐ | 76. storage | 100 | 600(A)(B)(C)(D) |
| ☐ | 77. collection | 100 | 601(A)(B)(C)(D)(E) |
| ☐ | 78. maintenance of area | 100 | 602(A)(B)(C)(D) |

**CURTAILMENT OF SERVICES**

| | | | |
|---|---|---|---|
| ☐ | 79. curtailment prohibited | 200 | 620 |

**CONDITIONS;**
**HEALTH OR SAFETY**

| | | | |
|---|---|---|---|
| ☐ | 80. endanger or impair | 200 | 750(A) thru (P) |

Inspector *K. LaFavre, A. Crowley*/syd *7/25/19* Time *200* AM **PM** Recieved by: _____

Next schedule reinspection: Date _____ Time _____ AM PM

**EXHIBIT 10 – NANTUCKET BOARD OF HEALTH 2ND 3RD AND 4TH INSPECTIONS**

THE COMMONWEALTH OF MASSACHUSETTS
**TOWN OF NANTUCKET**
**BOARD OF HEALTH**
**HOUSING & HUMAN HABITATION INSPECTION REPORT**

55/138.1

Location 77 Sparks Ave
Owner The Burke Nia Trust
PO Box 1065 Pepperell, MA 01463
Occupant James Broad
Rebecca McCreasky
Inspector's Name Kathy LaFavre, John Hedden

map 55 parcel 138 Date 8/23/19
Time: In 200 Out 230
type of dwelling:
single family dwelling ☒
multi family dwelling
lodging house
rooming unit   2 apts.
dormitory
other

Purpose:
Routine
Follow-up ☒
Complaint
Annual
Other

Based on an inspection as dated above, the items checked below indicate violated provisions of 105 CMR 410.00, minimum standards of fitness for human habitation. Descriptions of each item appear on the back of this form. Fines as noted on this inspection form, may be assessed pursuant to Mass. General Laws Chapter 40, Section 21D, and Chapter 1, Article 2 of the Code of the Town of Nantucket. This report serves as official notice of violated provisions and official notice to correct said violations.

**BATHROOM FACILITIES** - owner shall provide:Dwelling Unit (A)-Rooming Unit (B)

| | Fine | Code Section |
|---|---|---|
| ☐ 1. toilet with seat | 100 | 150(A)(3) |
| ☐ 2. wash basin | 100 | 150(A)(3) |
| ☐ 3. bathtub or shower | 100 | 150(A)(3) |
| ☐ 4. door | 100 | 150(A) |
| ☐ 5. accessability | 50 | 150(C) |
| ☐ 6. smooth/impervious | 50 | 150(D) |
| ☐ 7. shared facilities | 50 | 151 |
| ☐ 8. chem. toilets | 100 | 152 |

**WATER - POTABLE** - owner shall provide:

| | | |
|---|---|---|
| ☐ 9. quantity & pressure | 100 | 180 |
| ☐ 10. hot water (110-130) | 100 | 180 |

**HEATING FACILITIES - required**

| | | |
|---|---|---|
| ☐ 11. provided/each room | 200 | 200(A) |
| ☐ 12. approved heat units | 100 | 200(B) |
| ☐ 13. temp. requirements | 200 | 201 |
| ☐ 14. venting of heaters | 100 | 202 |

**LIGHTING AND ELECTRICAL** - Habitable Rooms other than kitchens

| | | |
|---|---|---|
| ☐ 15. transparent glass | 50 | 250(A) |
| ☐ 16. electrical outlets (2) | 50 | 250(B) |

**KITCHEN LIGHT AND ELECTRICAL (MINIMUM)**

| | | |
|---|---|---|
| ☐ 17. one light fixture (min.) | 50 | 251(A) |
| ☐ 18. two wall outlets | 50 | 251(B) |
| ☐ 19. transparent glass | 50 | 251(C) |

**BATHROOM LIGHTING (MINIMUM)**

| | | |
|---|---|---|
| ☐ 20. one light fixture | 50 | 252(A) |

**SWITCHES AND LIGHTING FIXTURES**

| | | |
|---|---|---|
| ☐ 21. good working cond. | 50 | 253(A) |
| ☐ 22. common area lights | 50 | 253(B) |
| ☐ 23. hallways/3 or more | 50 | 254(A) |
| ☐ 24. hallway /3 or less | 50 | 254(B) |
| ☐ 25. amperage req. | 50 | 255 |
| ☐ 26. temporary wiring | 100 | 256 |
| ☐ 27. light obstructions | 50 | 257 |
| ☐ 28. exemption>0002. | 50 | 258 |

**VENTILATION**

| | | |
|---|---|---|
| ☒ 29. windows etc. | 50 | 260(A) | Status of vents (2) |
| ☐ 30. mechanical vents | 50 | 260(B) |
| ☐ 31. ventilation shutoff | 50 | 261 |

**SEWAGE DISPOSAL**

| | | |
|---|---|---|
| ☐ 32. system requirement | 200 | 300 |

**INSTALLATION & MAINTENANCE OF FACILITIES PLUMBING CONNECTIONS**

| | | |
|---|---|---|
| ☐ 33. plumbing-kitchen | 100 | 350(A) |
| ☐ 34. plumbing-toilet | 100 | 350(B) |

**OWNERS INSTALLATION & MAINTENANCE**

| | | |
|---|---|---|
| ☐ 35. owners requirements | 100 | 351(D)(E) | Stove - gas status |
| ☐ 36. occupants resp. | 100 | 352(A)(B) | -install electric stove - shower sidewall |

**ASBESTOS**

| | | |
|---|---|---|
| ☐ 37. good repair | 100 | 353(A) |
| ☐ 38. repairs-BOH approval | 200 | 353(B) |
| ☐ 39. inclosure method | 200 | 353(C) |
| ☐ 40. removal compliance | 200 | 353(D) |
| ☐ 41. removal competence | 200 | 353(F) |
| ☐ 42. testing pre removal | 200 | 353(G) |

**METERING OF ELECTRICITY & GAS**

| | Fine | Code Section |
|---|---|---|
| ☐ 43. owner responsibility | 200 | 354(A)(1)(2) |
| ☐ 44. separate metering | 200 | 354(C) & 355 |

**SPACE & USE - MINIMUM SQUARE FOOTAGE**

| | | |
|---|---|---|
| ☐ 45. dwelling unit (occ.) 100 sq. ft. first — 100 sq. ft. each, if >1 | 200 | 400(A) |
| ☐ 46. dwelling-sleeping 70 sq. ft. first — 50 sq. ft. each, if >1 | 300 | 400(B) |
| ☐ 47. rooming-sleeping 60 sq. ft. first — 60 sq. ft. each, if >1 | 300 | 400(C) |
| ☐ 48. ceiling height—7 ft. | 200 | 401(A) |
| ☐ 49. ceiling height—½ ft. | 200 | 401(B) |
| ☐ 50. 1/2 height below gr. | 300 | 402 |

**TEMPORARY HOUSING**

| | | |
|---|---|---|
| ☐ 51. BOH permission | 300 | 430 |
| ☐ 52. minimum standards | 200 | 431 |

**EXITS**

| | | |
|---|---|---|
| ☐ 53. means of egress | 100 | 450 |
| ☐ 54. egress obstructions | 100 | 451 |
| ☐ 55. safe conditions | 100 | 452 |

**SECURITY**

| | | |
|---|---|---|
| ☐ 56. locks | 100 | 480(A)(B)(C)(D)(F) |
| ☐ 57. posting name | 100 | 481 |
| ☒ 58. smoke detectors | 200 | 482 | re-install 1 smoke @ top of stairs. |
| ☐ 59. emergency lighting | 200 | 483 |

**MAINTENANCE OF STRUCTURAL ELEMENTS**

| | | |
|---|---|---|
| ☐ 60. owners resp. | 200 | 500 | Stair weak - |
| ☐ 61. weathertight exterior | 100 | 501(A) | 1 piece used |
| ☐ 62. weathertight door | 100 | 501(B) |
| ☐ 63. walls, floors, ceilings | 100 | 501(C) |
| ☐ 64. use of lead paint | 200 | 502 |
| ☐ 65. railings-stairways | 50 | 503(A) |
| ☐ 66. railings-porch | 50 | 503(B) |
| ☐ 67. balusters-6" max. | 50 | 503(C) |
| ☐ 68. non-absorb. floors | 50 | 504(B) |
| ☐ 69. non-absorb. bath walls | 50 | 504(B) |
| ☐ 70. non-absorb. shower walls | 50 | 504(C) |
| ☐ 71. occupants responsibility | 100 | 505 |

**INSECTS & RODENTS**

| | | |
|---|---|---|
| ☐ 72. extermination | 100 | 550(A)(B)(C)(D) |
| ☐ 73. screen windows | 100 | 551(A) | East window |
| ☐ 74. screen doors | 100 | 552(A) | East door |
| ☐ 75. screen incl. dates | 100 | 553 |

**GARBAGE & RUBBISH**

| | | |
|---|---|---|
| ☐ 76. storage | 100 | 600(A)(B)(C)(D) |
| ☐ 77. collection | 100 | 601(A)(B)(C)(D)(E) |
| ☐ 78. maintenance of area | 100 | 602(A)(B)(C)(D) |

**CURTAILMENT OF SERVICES**

| | | |
|---|---|---|
| ☐ 79. curtailment prohibited | 200 | 620 |

**CONDITIONS: HEALTH OR SAFETY**

| | | |
|---|---|---|
| ☐ 80. endanger or impair | 200 | 750(A) thru (P) |

Inspector K. LaFavre   Date 8/23/19   Time 200   AM PM   Recieved by: _____
Next schedule reinspection: Date 9/3/19   Time 200   AM PM

## EXHIBIT 10 – NANTUCKET BOARD OF HEALTH 2ND 3RD AND 4TH INSPECTIONS

THE COMMONWEALTH OF MASSACHUSETTS
**TOWN OF NANTUCKET**
**BOARD OF HEALTH**
**HOUSING & HUMAN HABITATION INSPECTION REPORT**

55/138-1

Location 77 Sparke Ave
Owner The Bruko Nominees Trust
PO Box 1065 Pepperell, MA 01963
Occupant Jamie Brown   Address (if different)
Rebecca McCrensky
Inspector's Name Kathy Lefavre, Ari-Crowley

map 55   parcel 138.1   Date 9/8/19
phone 561-693-   Time: In 200   out 230
type of dwelling: 4141

- single family dwelling
- multi family dwelling
- lodging house
- rooming unit
- dormitory
- other 2 apts w/in

Purpose:
- Routine
- Follow-up
- Complaint ☒
- Annual
- Other

Based on an inspection as dated above, the items checked below indicate violated provisions of 105 CMR 410.00, minimum standards of fitness for human habitation. Descriptions of each item appear on the back of this form. Fines as noted on the inspection form, may be assessed pursuant to Mass. General Laws Chapter 40, Section 21D, and Chapter 1, Article 2 of the Code of the Town of Nantucket. This report serves as official notice of violated provisions and official notice to correct said violations.

**BATHROOM FACILITIES -**
owner shall provide Dwelling Unit (A)-Rooming Unit (B)

| | Fine | Code Section |
|---|---|---|
| 1. toilet with seat | 100 | 150(A)(B) |
| 2. wash basin | 100 | 150(A)(B) |
| 3. bathtub or shower | 100 | 150(A)(B) |
| 4. door | 100 | 150(B) |
| 5. accessability | 50 | 150(C) |
| 6. smooth/impervious | 50 | 150(D) |
| 7. shared facilities | 50 | 151 |
| 8. chem. toilets | 100 | 152 |

**WATER - POTABLE** - owner shall provide:

| | | |
|---|---|---|
| 9. quantity & pressure | 100 | 180 |
| 10. hot water (110-130) | 100 | 190 |

**HEATING FACILITIES - required**

| | | |
|---|---|---|
| 11. provided/each room | 200 | 200(A) |
| 12. approved heat units | 100 | 200(B) |
| 13. temp. requirements | 200 | 201 |
| 14. venting of heaters | 100 | 202 |

**LIGHTING AND ELECTRICAL** - Habitable Rooms other than kitchens

| | | |
|---|---|---|
| 15. transparent glass | 50 | 250(A) |
| 16. electrical outlets (2) | 50 | 250(B) |

**KITCHEN LIGHT AND ELECTRICAL (MINIMUM)**

| | | |
|---|---|---|
| 17. one light fixture (min.) | 50 | 251(A) |
| 18. two wall outlets | 50 | 251(B) |
| 19. transparent glass | 50 | 251(C) |

**BATHROOM LIGHTING (MINIMUM)**

| | | |
|---|---|---|
| 20. one light fixture | 50 | 252(A) |

**SWITCHES AND LIGHTING FIXTURES**

| | | |
|---|---|---|
| 21. good working order | 50 | 253(A) |
| 22. common area lights | 50 | 253(B) |
| 23. hallways/3 or more | 50 | 254(A) |
| 24. hallway /3 or less | 50 | 254(B) |
| 25. amperage req. | 50 | 255 |
| 26. temporary wiring | 100 | 256 |
| 27. light obstructions | 50 | 257 |
| 28. exemption >6000. | 50 | 258 |

**VENTILATION**

| | | |
|---|---|---|
| 29. windows etc. | 50 | 280(A) |
| ☒ 30. mechanical vents | 50 | 280(B) |
| 31. ventilation shutoff | 50 | 281 |

**SEWAGE DISPOSAL**

| | | |
|---|---|---|
| 32. system requirement | 200 | 300 |

**INSTALLATION & MAINTENANCE OF FACILITIES
PLUMBING CONNECTIONS**

| | | |
|---|---|---|
| 33. plumbing-kitchen | 100 | 350(A) |
| 34. plumbing-toilet | 100 | 350(B) |

**OWNERS INSTALLATION & MAINTENANCE**

| | | |
|---|---|---|
| ☒ 35. owners requirements | 100 | 351(A)(B) |
| 36. occupants resp. | 100 | 352(A)(B) |

**ASBESTOS**

| | | |
|---|---|---|
| 37. good repair | 100 | 353(A) |
| 38. repairs-BOH approx | 200 | 353(B) |
| 39. inclosure method | 200 | 353(C) |
| 40. removal compliance | 200 | 353(D) |
| 41. removal compliance | 200 | 353(F) |
| 42. testing-pre removal | 200 | 353(G) |

**METERING OF
ELECTRICITY & GAS**

| | Fine | Code Section |
|---|---|---|
| 43. owner responsibility | 200 | 354(A)(1)(2) |
| 44. separate metering | 200 | 354(C) & 355 |

**SPACE & USE -
MINIMUM SQUARE FOOTAGE**

| | | |
|---|---|---|
| 45. dwelling unit (gen.) 150 sq. ft. first — 100 sq. ft. each, if >1 | 300 | 400(A) |
| 46. dwelling-sleeping 70 sq. ft. first — 50 sq. ft. each, if >1 | 300 | 400(B) |
| 47. rooming-sleeping 80 sq. ft. first — 60 sq. ft. each, if >1 | 300 | 400(C) |
| 48. ceiling height — 7 ft. | 200 | 401(A) |
| 49. ceiling height—5 ft. | 200 | 401(B) |
| 50. 1/2 height below gr. | 300 | 402 |

**TEMPORARY HOUSING**

| | | |
|---|---|---|
| 51. BOH permission | 300 | 430 |
| 52. minimum standards | 200 | 431 |

**EXITS**

| | | |
|---|---|---|
| 53. means of egress | 100 | 450 |
| 54. egress obstructions | 100 | 451 |
| 55. safe conditions | 100 | 452 |

**SECURITY**

| | | |
|---|---|---|
| 56. locks | 100 | 480(A)(B)(C)(D)(E) |
| 57. posting name | 100 | 481 |
| 58. smoke detectors | 200 | 482 |
| 59. emergency lighting | 200 | 483 |

**MAINTENANCE OF
STRUCTURAL ELEMENTS**

| | | |
|---|---|---|
| 60. owners resp. | 200 | 500 |
| 61. weathertight window | 100 | 501(A) |
| 62. weathertight door | 100 | 501(B) |
| 63. walls, floors, ceilings | 100 | 501(C) |
| 64. use of lead paint | 200 | 502 |
| 65. railings-stairways | 50 | 503(A) |
| 66. railings-porch | 50 | 503(B) |
| 67. balusters-6" max. | 50 | 503(C) |
| 68. non-absorb. floor | 50 | 504(A) |
| 69. non-absorb. bath walls | 50 | 504(B) |
| 70. non absorb. shower walls | 50 | 504(C) |
| 71. occupants responsibility | 100 | 505 |

**INSECTS & RODENTS**

| | | |
|---|---|---|
| 72. extermination | 100 | 550(A)(B)(C)(D) |
| 73. screen windows | 100 | 551(A) |
| 74. screen doors | 100 | 552(A) |
| 75. screen inst. dates | 100 | 553 |

**GARBAGE & RUBBISH**

| | | |
|---|---|---|
| 76. storage | 100 | 600(A)(B)(C)(D) |
| 77. collection | 100 | 601(A)(B)(C)(D)(D) |
| 78. maintenance of area | 100 | 602(A)(B)(C)(D) |

**CURTAILMENT OF SERVICES**

| | | |
|---|---|---|
| 79. curtailment prohibited | 200 | 620 |

**CONDITIONS;
HEALTH OR SAFETY**

| | | |
|---|---|---|
| 80. endanger or impair | 200 | 750(A) thru (P) |

Handwritten notes:
(.280) Need 2 Bath Vents - repair 1 install 1
(.351) - Gas Stove - Shower - Side wall
(.500) side landing - 1 wood piece repair-replace
(.551, 552) east, south - east

Inspector KLaFavre   Date 9/8/19   Time 200   AM PM   Recieved by: _____

## EXHIBIT 14 – NANTUCKET BOARD OF HEALTH 2ND 3RD AND 4TH INSPECTIONS

31




THE COMMONWEALTH OF MASSACHUSETTS   55/138.1
# TOWN OF NANTUCKET
## BOARD OF HEALTH
### HOUSING & HUMAN HABITATION INSPECTION REPORT

Location **77 Sparks Ave.**  map **55**  parcel **138.1**

Owner **The Bucko Nominee Trust**  phone #

**PO Box 1065  Pepperell, MA 01463**  type of dwelling:

| | |
|---|---|
| single family dwelling | ☒ |
| multi family dwelling | ☐ |
| lodging house | ☐ |
| rooming unit | ☐ |
| dormitory | ☐ |
| Other **2 apts. w/in dw.** | ☒ |

Occupant **James Brace** Address (if different) **Rebecca McCrenLey**

Inspector's Name **Kathy LaFaure, John Hedden**

Date **9/30/19**  Time: In   Out

Purpose:
| | |
|---|---|
| Routine | |
| Follow-up | ☒ |
| Complaint | ☒ |
| Annual | |
| Other | ☒ |

Based on an inspection as dated above, the items checked below indicate violated provisions of 105 CMR 410.00, minimum standards of fitness for human habitation. Descriptions of each item appear on the back of this form. Fines as noted on the inspection form, may be assessed pursuant to Mass. General Laws Chapter 40, Section 21D, and Chapter 1, Article 2 of the Code of the Town of Nantucket. This report serves as official notice of violated provisions and official notice to correct said violations.

### BATHROOM FACILITIES -
owner shall provide dwelling Unit (A) Rooming Unit (B)

| | | Fine | Code Section |
|---|---|---|---|
| ☐ | 1. toilet with seal | 100 | 150(A)(1) |
| ☐ | 2. wash basin | 100 | 150(A)(B) |
| ☐ | 3. bathtub or shower | 100 | 150(A)(B) |
| ☐ | 4. door | 100 | 150(A) |
| ☐ | 5. accessability | 50 | 150(C) |
| ☐ | 6. smooth/impervious | 50 | 150(D) |
| ☐ | 7. shared facilities | 50 | 151 |
| ☐ | 8. chem. toilets | 100 | 152 |

### WATER - POTABLE - owner shall provide:
| | | | |
|---|---|---|---|
| ☐ | 9. quantity & pressure | 100 | 180 |
| ☐ | 10. hot water (110-130) | 100 | 190 |

### HEATING FACILITIES - required
| | | | |
|---|---|---|---|
| ☐ | 11. provided/each room | 200 | 200(A) |
| ☐ | 12. approved heat units | 100 | 200(B) |
| ☐ | 13. temp. requirements | 200 | 201 |
| ☐ | 14. venting of heaters | 100 | 202 |

### LIGHTING AND ELECTRICAL - Habitable Rooms other than kitchens
| | | | |
|---|---|---|---|
| ☐ | 15. transparent plates | 50 | 250(A) |
| ☐ | 16. electrical outlets (2) | 50 | 250(B) |

### KITCHEN LIGHT AND ELECTRICAL (MINIMUM)
| | | | |
|---|---|---|---|
| ☐ | 17. one light fixture (min.) | 50 | 251(A) |
| ☐ | 18. two wall outlets | 50 | 251(B) |
| ☐ | 19. transparent plates | 50 | 251(C) |

### BATHROOM LIGHTING (MINIMUM)
| | | | |
|---|---|---|---|
| ☐ | 20. one light fixture | 50 | 252(A) |

### SWITCHES AND LIGHTING FIXTURES
| | | | |
|---|---|---|---|
| ☐ | 21. good working cond. | 50 | 253(A) |
| ☐ | 22. common area lights | 50 | 253(A) |
| ☐ | 23. hallways/3 or more | 50 | 254(A) |
| ☐ | 24. hallway/2 or less | 50 | 254(B) |
| ☐ | 25. amperage req. | 50 | 255 |
| ☐ | 26. temporary wiring | 100 | 256 |
| ☐ | 27. light obstructions | 50 | 257 |
| ☐ | 28. exemption=200CR | 50 | 258 |

### VENTILATION
| | | | |
|---|---|---|---|
| ☐ | 29. windows etc. | 50 | 250(A) |
| ☒ | 30. mechanical vents | 50 | 280(B) |
| ☐ | 31. ventilation shutoff | 50 | 281 |

*~280 2 bath vents. 1 new. 1 repair*

### SEWAGE DISPOSAL
| | | | |
|---|---|---|---|
| ☐ | 32. system requirement | 200 | 300 |

### INSTALLATION & MAINTENANCE OF FACILITIES
PLUMBING CONNECTIONS
| | | | |
|---|---|---|---|
| ☐ | 33. plumbing kitchen | 100 | 350(A) |
| ☐ | 34. plumbing toilet | 100 | 350(B) |

### OWNERS INSTALLATION & MAINTENANCE
| | | | |
|---|---|---|---|
| ☐ | 35. owners requirements | 100 | 331(A)(B) |
| ☐ | 36. occupants resp. | 100 | 352(A)(B) |

*- shower-side wall repair*
*- gas stove install 10/1*

### ASBESTOS
| | | | |
|---|---|---|---|
| ☐ | 37. good repair | 100 | 353(A) |
| ☐ | 38. repairs BOH approv. | 200 | 353(C) |
| ☐ | 39. inclosure method | 200 | 353(C) |
| ☐ | 40. removal compliance | 200 | 353(D) |
| ☐ | 41. removal compliance | 200 | 353(F) |
| ☐ | 42. testing-pre removal | 200 | 353(G) |

### METERING OF ELECTRICITY & GAS
| | | Fine | Code Section |
|---|---|---|---|
| ☐ | 43. owner responsibility | 200 | 354(A)(1)(2) |
| ☐ | 44. separate metering | 200 | 354(C) & 355 |

### SPACE & USE -
MINIMUM SQUARE FOOTAGE
| | | | |
|---|---|---|---|
| ☐ | 45. dwelling unit (gen.) 150 sq. ft. first -- 100 sq. ft. each, if >1 | 300 | 400(A) |
| ☐ | 46. dwelling sleeping 70 sq. ft. first -- 50 sq. ft. each, if >1 | 300 | 400(B) |
| ☐ | 47. rooming sleeping 80 sq. ft. first -- 60 sq. ft. each, if >1 | 300 | 400(C) |
| ☐ | 48. ceiling height--<7 ft. | 200 | 401(A) |
| ☐ | 49. ceiling height--<5 ft. | 200 | 401(B) |
| ☐ | 50. 1/2 height below gr. | 300 | 402 |

### TEMPORARY HOUSING
| | | | |
|---|---|---|---|
| ☐ | 51. BOH permission | 300 | 430 |
| ☐ | 52. minimum standards | 200 | 431 |

### EXITS
| | | | |
|---|---|---|---|
| ☐ | 53. means of egress | 100 | 450 |
| ☐ | 54. egress obstructions | 100 | 451 |
| ☐ | 55. safe conditions | 100 | 452 |

### SECURITY
| | | | |
|---|---|---|---|
| ☐ | 56. locks | 100 | 480(A)(B)(C)(D)(E) |
| ☐ | 57. posting name | 100 | 481 |
| ☐ | 58. smoke detectors | 200 | 482 |
| ☐ | 59. emergency lighting | 200 | 483 |

### MAINTENANCE OF STRUCTURAL ELEMENTS
| | | | |
|---|---|---|---|
| ☐ | 60. owners resp. | 200 | 500 |
| ☐ | 61. weathertight window | 100 | 501(A) |
| ☐ | 62. weathertight door | 100 | 501(B) |
| ☐ | 63. walls, floors, ceilings | 100 | 501(C) |
| ☐ | 64. use of lead paint | 200 | 502 |
| ☐ | 65. railings stairways | 50 | 503(A) |
| ☐ | 66. railings porch | 50 | 503(B) |
| ☐ | 67. balusters 6" max. | 50 | 503(B) |
| ☐ | 68. non-absorb. floors | 50 | 504(A) |
| ☐ | 69. non-absorb. bath walls | 50 | 504(B) |
| ☐ | 70. non-absorb. shower walls | 50 | 504(B) |
| ☐ | 71. occupants responsibility | 100 | 505 |

### INSECTS & RODENTS
| | | | |
|---|---|---|---|
| ☐ | 72. extermination | 100 | 550(A)(B)(C)(D) |
| ☐ | 73. screen windows | 100 | 551(A) |
| ☒ | 74. screen doors | 100 | 552(A) |
| ☐ | 75. screen frail dates | 100 | 553 |

### GARBAGE & RUBBISH
| | | | |
|---|---|---|---|
| ☐ | 76. storage | 100 | 600(A)(B)(C)(D) |
| ☐ | 77. collection | 100 | 601(A)(B)(C)(D)(E) |
| ☐ | 78. maintenance of area | 100 | 602(A)(B)(C)(D) |

### CURTAILMENT OF SERVICES
| | | | |
|---|---|---|---|
| ☐ | 79. curtailment prohibited | 200 | 620 |

### CONDITIONS: HEALTH OR SAFETY
| | | | |
|---|---|---|---|
| ☐ | 80. endanger or impair | 200 | 750(A) thru (P) |

Inspector **K LaFaure**  Date **9/30/19**  Time **11:15** AM PM  Recieved by: _____

Next schedule reinspection: Date **TBD w/owner** Time - *gas install by 10/1/19; all other repairs ordered and on schedule w/in 1 wk to be occ.*

*via email & tenant.*

EXHIBIT 11 – PHOTOGRAPHS OF MOLD





EXHIBIT – 11 PHOTOGRAPHS OF MOLD



## EXHIBIT 12 – EMAIL FROM FLANDERS TO KATHY LAFARVE

**From:** Katherine Flanders <kfb.email@gmail.com>
**Sent:** Friday, September 06, 2019 1:19 PM
**To:** Kathy LaFavre <KLaFavre@nantucket-ma.gov>
**Cc:** Rebecca McCrensky <rebecca@spreadpawsitivity.com>; Katherine Flanders Borden <kfb.email@gmail.com>
**Subject:** Re: Please don't forget gas stove

Hi Kathy,

Im sorry I was in a federal mandatory evacuation zone for the hurricane here and had no electricity/phone or email so please check if that might effect the ticketing as I am trying to do the bes
here. My lease with Rebecca states that the rental was "as is" as I know the home is an old structure and I did not rent it as a luxury home. Both stoves worked fine at the beginning of the lea

EXHIBIT 13 -- TEXT MESSAGES

 

Maybe: Katherine Flanders 〉

No you have breached lease.
Goodbye.

Tue, Jul 23, 5·11 PM

Besides blocking entrance
multiple times with proper
notice given which has already
violated our lease, you have
also breached the lease by
smoking inside the home and I
have photos from the
inspection today to prove it.
And I also have photos that
show 3 burners of gas stove
working perfectly that clearly
demonstrate your lies. Im
DONE with your manipulation
and dishonesty Rebecca and
you will receive eviction
paperwork shortly.

EXHIBIT 13 -- TEXT MESSAGES

 

Maybe: Katherine Flanders >

YOU KNOW VERY VERY WELL
FROM OUR
CORRESPONDENCE THAT I
ONLY AGREED FOR YOU TO
SUBLET THE HOME ON
AIRBNB AND ONLY FOR A FEW
WEEKS. AIRBNB HAS A VERY
SECURE PROCESS AND
REQUIRES DOCUMENTS FROM
ALL GUEST AS WELL AS
REVIEWS. AIRBNB WAS THE
ONLY AVENUE I AGREED TO
LET YOU USE TO SUBLEASE
AND ONLY FOR A FEW WEEKS
MEANING AT MOST 3 WEEKS
SO YOU WILL BE SORRY THAT
YOU ARE BREAKING THIS
LEGAL AGREEMENT REBECCA.
GROW UP!

you know your business will
FAIL in every location as you
are a dishonest disgraceful
woman you will see how much
you will fail as someone as
dishonest as you will never be
successful.



Maybe: Katherine Flanders >

> [illegible text]

No Rebecca you are wrong I
have spoken to multiple
lawyers as Im getting ready to
sue you. Our correspondence
with regards to the lease
explains the parameters of
subleasing CLEARLY.

> [illegible text]

 

Maybe: Katherine Flanders >

Actually Rebecca you better
brush up on your legal skills as
you are severely mistaken and I
have confirmation from 8
Massachusetts attorneys. - you
had better review our texts
prior to signing the lease.
Goodnight you disgusting liar
you are a disgrace to God.

> [illegible text]

No Rebecca you need to stop

37

EXHIBIT 13 – TEXT MESSAGES

 

Maybe: Kate Flanders Borden >

You are a dishonest liar and that has already been documented and I have spoken to Kathy the health inspector and she knows you were violating the lease and all your lies are documented.

You are a disgraceful person.

 

Maybe: Kate Flanders Borden >

names of the people you are subletting to? This will be clearly documented at least and you were ONLY allowed to list on airbnb for a few weeks and not outside of airbnb so what you are doing is illegal as is refusing to give me the names of the people living in my house. You are a disgraceful person no wonder your business will fail on the island as you are a completely dishonest and deceitful person.

 

Maybe: Kate Flanders Borden >



You are a very dishonest and manipulative person I can see that you are in no way connected to God and that is very sad. I will have screens and mouse traps delivered to the basement door since you refuse to allow an exterminator today as you had requested.

EXHIBIT 14 – TEXT MESSAGES

 

**Maybe: Katherine Flanders** >



EXHIBIT 14 – 93A Demand letter

Attorney Michael J. Wilson, P.C.
1 Beaver Farm Rd.
Nantucket, MA 02554
Telephone: (508) 228-1929
Fax: (508) 228-1676
e-mail: mjwatt@wilsonlaw.com

August 30, 2019

Katherine F. Borden
P.O. Box 1065
Pepperell, MA 01463

Re: M.G.L.c.93A 30 day demand letter/U.S. Mail cert.
#70190160000067689529

Dear Ms. Borden;

Please be advised that this firm represents Rebecca
McCrensky with respect to her residential tenancy located
at 77 Sparks Avenue Nantucket, MA.

This letter is being sent pursuant to Massachusetts
General Laws chapter 93A, §2 and §9. My client entered
into a residential lease agreement with you based on your
verbal and written representations that the property was a
safe, appropriate and reasonable residential premises which
was fit for human habitation. After taking occupancy my
client immediately notified you of numerous issues with the
premises including though not limited to the broken gas
range, faulty wiring and shorting out of the electric range
with explosive sparking, missing and non-functioning smoke
detectors, missing window screens, lack of ventilation in
the bathrooms and the presence of mold and mildew, non-
functioning lights.

An inspection by the Town of Nantucket's Health
Department on July 26, 2019 and again on August 23, 2019
reveal the numerous State Sanitary Code violations and
safety hazards present. I have also been advised that,
despite your representations to my client which she relied
upon to enter in to the lease agreement, you actually knew
of the State Sanitary Code violations and safety issues in
the premises prior to my client inquiring about the rental
or taking possession. This conduct is in direct
contravention of the Attorney General's regulations
promulgated in furtherance of said law, is unfair,
fraudulent and deceptive and beyond what any residential
tenant should be forced to endure.

Demand is hereby made for the full refund of all the
rental proceeds paid by my client and accepted by you for
the residential premises located at 77 Sparks Ave.

40

EXHIBIT 14 – 93A Demand letter EXHIBIT 14 – 93A Demand letter

Nantucket, MA. specifically, the sum of Thirty Three Thousand, Seven Hundred Fifty, ($33,750.00) dollars and 00/100.

In addition to the above conduct I have reviewed the operative lease agreement for the premises and it appears that you have taken a Two Thousand, Five Hundred, ($2,500.00) dollar security deposit from my client in violation of the provisions of Massachusetts General Laws Chapter 186 §15B (3)(a) and 940 C.M.R. 3.17 et. seq.

Demand is hereby made for the prompt and immediate return of my client's deposit and all accrued interest forthwith.

In the event you fail or refuse to refund my client's money within thirty, (30) days I will file a civil collection action under Massachusetts' Consumer Protection Act, M.G.L. c. 93A, and seek the imposition of double or treble damages, as the law allows, as well as the reimbursement of all attorney fees incurred by my client.

While I am hopeful we may avoid the Court process, in the event you do not respond to this demand and return my client's money within thirty, (30) days from your receipt then I will have been forced to commence legal proceedings to protect my client's rights.

May I please hear from you in this regard?

Sincerely,

Michael J. Wilson

Cc: client

41

EXHIBIT 14 – 93A Demand letter

**From:** Katherine Flanders Borden kaflannefborden@gmail.com
**Subject:** receipt of letter
**Date:** October 25, 2019 at 4:29 PM
**To:** mjw@mjwilsonlaw.com
**Cc:** Katherine Flanders Borden kfb.emails@gmail.com

Dear Attorney Wilson

I just received via email a scan of your letter regarding 77 Sparks Ave. I have forwarded it to my attorney and we will reply to the attempted extortion next week. Just so that you are aware your client has not been truthful with you regarding the facts of this case and I have extensive proof of this dishonesty.

Best regards,
Katherine

COMMONWEALTH OF MASSACHUSETTS

Barnstable ss.                                    HOUSING COURT DEPARTMENT
                                                  Southeast DIVISION


Rebecca McCrensky
    PLAINTIFF(S)

vs.

Katherine Flanders
    DEFENDANT(S)

### Verification by Plaintiff

    I, Rebecca McCrensky, Plaintiff in the above entitled action, do hereby swear and aver that the facts contained in the "Verified Complaint and Demand for Jury Trial" are true to the best of my knowledge and belief.

_Rebecca McCrensky_
Rebecca McCrensky