# **EXHIBIT D**

*COMMONWEALTH OF MASSACHUSETTS*

BARNSTABLE, SS:           HOUSING COURT DEPARTMENT
BRISTOL, SS              SOUTHEASTERN DIVISION
DUKES, SS               Docket No. 20-CV-00275CI
NANTUCKET, SS
PLYMOUTH, SS

Rebecca McCrensky
Plaintiff

vs.

Katherine Flanders
Defendant

### JUDGMENT

This action came on for trial/hearing before the Court, **Michaud, J.** presiding, and the issues having been duly tried/heard and findings having been duly rendered, it is **ORDERED** and **ADJUDGED**:

Judgment for the Plaintiff for damages, interest and attorney's fees in the amounts set forth in the Court's Order for Judgment.

Dated at Fall River, Massachusetts this 25th day of **March 2022**.

_____
MARK R. JEFFRIES
CLERK MAGISTRATE

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Bristol, Plymouth, Dukes　　　　　　HOUSING COURT DEPT
Barnstable, Nantucket, ss.　　　　　　SOUTHEAST DIVISION
　　　　　　　　　　　　　　　　　　Docket NO. 20H83CV0275CI

Rebecca McCrensky　　　　　　)
　　Plaintiff　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)
Katherine Flanders　　　　　　　)
　　Defendant　　　　　　　　　)

## MEMORANDUM OF DECISION AND ORDER ON MOTION TO ASSESS DAMAGES AGAINST KATHERINE FLANDERS

The Plaintiff rented property from the Defendant at 77 Sparks Avenue, Nantucket, Massachusetts ("Premises"). The Parties entered into a seasonal 3 month rental agreement on June 28, 2019. Pursuant to that agreement the Plaintiff paid the Defendant $33,750.00 in advance for rent and an additional $2500.00 as a security deposit. The tenancy was apparently plagued by problems from the very beginning. Upon moving in the Plaintiff discovered that the premises were infested with vermin, were exceptionally dirty with expired food and otherwise dirty and uninhabitable. The Plaintiff hired a cleaning company to completely clean the units so that they would be habitable. Shortly thereafter when the Plaintiff attempted to use the stoves in the units neither worked due to mice eating the wiring forcing the Plaintiff to dine out and incur unnecessary expenses. These problems were confirmed by local inspectors and technicians.

The Plaintiff contacted the Defendant regularly reporting the issues that had arisen but was informed that the property had been rented "as is" and thus she refused to make any repairs. A subsequent inspection by the Nantucket Board of Health on July 26, 2019 determined that there were a myriad of issues with the property to include missing smoke detectors, missing screens, inoperable stoves, improper ventilation, missing lights and inadequate locks. Most of these conditions continued to exist for the balance of the tenancy.

On the final day of the tenancy the Plaintiff left the keys for the Defendant and locked the doors leaving the premises in broom clean condition and apparently in better shape then when she occupied it. On that day the Plaintiff also texted the Defendant requesting the return of the security deposit. It was not returned despite Plaintiff making a demand under G.L. c. 93A that also went unanswered.

After commencing suit and receiving a late filed answer the Defendant failed or refused to provide answers to discovery requests despite receiving multiple requests. The Plaintiff moved for entry of final judgment in accordance with pursuant to Mass.R.Civ.P 33(a) which was allowed on September 28, 2021.

On February 7, 2021 the matter was scheduled for an assessment of damages hearing in which only the Plaintiff appeared. After hearing the Court has determined the following;[1]

**Warranty of Habitability**

There exists with respect to every residential tenancy an implied warranty of habitability that the premises are fit for human habitation. A landlord breaches that warranty when a defect that may materially affect the health or safety exists. *See Boston Housing Authority v Hemingway*, 363 Mass. 184, 199 (1973). However, not every defect is material and not every defect gives rise to a diminution in value. A breach under this standard occurs from the point in time when a landlord had notice or should have known of a substantial defect or sanitary code violation in the premises. This breach continues until the underlying defect is remedied. See *Berman & Sons v Jefferson* 379 Mass. 196 (1979). The measure of damages for breach of the warranty of habitability is the difference between the fair rental value of the premises free of defects and the fair rental value of the premises during the period that the defective conditions existed. *See Boston Housing Authority v Hemingway*, 363 Mass. 184, 199 (1973).

---

[1] The Court notes that the Plaintiff had demanded a jury trial at the time of the filing of the within matter however; Plaintiff's acquiescence in going forward on an assessment of damages without a jury is herein deemed an express waiver thereof.

2

In determining the amount of damages to be awarded, mathematical accuracy of proof is not required, *Rombola v. Consindas*, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966), as the amount of damages seldom can be proved with the exactness of mathematical demonstration. *Agoos Leather Companies v. American & Foreign Ins. Co.*, 342 Mass. 603, 608, 174 N.E.2d 652, 655 (1961). *Dalton v. Demos Brothers General Contractors, Inc.*, 334 Mass. 377, 379, 135 N.E.2d 646, 647 (1956). *Piper v. Childs*, 290 Mass. 560, 563, 195 N.E. 763, 764 (1935).

In the present case the premises were in subpar condition from the date the Plaintiff entered until the date she left. These deficiencies included unsanitary conditions and rodent infestation which were addressed by the Plaintiff at her own expense and additionally missing smoke detectors, missing screens, inoperable stoves, improper ventilation, missing lights and inadequate locks. All of the above conditions were ignored by the Defendant despite multiple communications form the Plaintiff in the form of texts that were responded to by the Defendant.

**M.G.L. c. 93A**

The existence of unfair acts and practices must be determined from the circumstances of each case." *Commonwealth v. DeCotis*, 366 Mass. 234, 242 (1974). Under G.L. c. 93A, §§ 2 and 9, the circumstances and facts of each case must be analyzed to determine whether the practice in question falls within any recognized conception of unfairness or is immoral, unethical, oppressive, or unscrupulous. *Mechanics National Bank of Worcester v. Killeen*, 377 Mass. 100 (1979); *PMP Associates v. Globe Newspaper Company*, 366 Mass. 593, 596 (1975); *Swanson v. Banker's Life Co.*, 389 Mass. 345, 349 (1983). There must be a causal connection between the conduct alleged to be unfair or deceptive, and the injury or harm to the person. See, *Kohl v. Silver Lake Motors, Inc.*, 369 Mass. 795 (1976); *Glickman v. Brown*, 21 Mass. App. Ct. 229 (1985). Injury or harm can include the loss of money or property or the invasion of any legally protected interest. *Leardi v. Brown*, 394 Mass. 151, 159-160 (1985).

Chapter 93A, § 9 (3) provides in part that damages " . . . shall be awarded in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the Court finds that use or employment of the act or practice was a willful

3

or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated section 2." The prevailing party is also entitled to reasonable attorney's fees and costs.

The Legislature delegated to the Attorney General the power to promulgate regulations that identify, with specificity, acts or practices that are to be considered unfair or deceptive under G.L. c. 93A. 940 CMR § 3.00, et seq. Such regulations have the force of law. *Purity Supreme, Inc. v. Attorney General,* 380 Mass 762 (1980).

Under the provisions of 940 CMR § 3.16 (3), an act or practice is a violation of Chapter 93A if "it fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare . . ." With respect to residential rental housing § 3.17 (1) (I) provides that "it shall be an unfair and deceptive practice for an owner to . . . fail to comply with the State Sanitary Code or any other law applicable to the conditions of a dwelling unit within a reasonable time after notice of a violation of such code or law from the tenant or agency."

It is important to note however, that not every violation of a law or regulation intended to protect residential tenants will constitute a violation of Chapter 93A. As the Supreme Judicial Court has consistently ruled, "a violation of a law or regulation, including a violation of the building code, will be a violation of c. 93A, § 2 (a), *only* if the conduct leading to the violation or violations is both unfair or deceptive and occurs in trade or commerce . . . And whether the particular violation or violations qualify as unfair or deceptive conduct is best discerned from the circumstances of each case." *Klairmont v. Gainsboro Restaurant, Inc.,* 465 Mass 165, 174 (2013). The Court further explained in *Klairmont,* at p. 176 that ". . . not all building code violations -- indeed, very few — will give rise to violations of c. 93A, either because they would lack unfairness or deceptiveness . . . or because they do not arise in trade or commerce. Further, it bears emphasizing that at least in the absence of conduct that qualifies as unfair or deceptive, a negligent act or acts, alone, do not violate c. 93A." A violation of the State Sanitary Code, similar to a violation of the State Building Code, does not always involve conduct that is unfair or deceptive.

4

After a review of the evidence presented at the hearing on the assessment of damages, I find however that the Defendant, who has rented and managed this two-family investment property for several years, and actively advertises its availability for rental is in the business of owning and managing residential units for purposes of G.L. c. 93A. I also find that she engaged in unfair and deceptive practices within the meaning of G.L. c. 93A and the Attorney General regulations thereunder for, among other acts, interfering with the Plaintiff's quiet enjoyment and breaching the implied warranty of habitability by renting premises for human habitation that were subpar at best and then ignoring the requests of the Plaintiffs to address the aforementioned issues. As such I find that Plaintiff is entitled to an award of multiple damages (not less than double nor more than treble) because I find that the Defendants violation of G.L. c. 93A was willful or knowing. "The 'willful or knowing' requirement of [G.L. c. 93A,] § 9(3), goes not to actual knowledge of the terms of the statute, but rather to knowledge, or reckless disregard, of conditions in a rental unit which, whether the [landlord} knows it or not, amount to violations of the law." *Montanez v. Bagg*, 24 Mass. App. Ct. 954, 956, (1987).

Although there was no evidence that the Defendant intended harm to Plaintiff, I find that the Defendant's completely inadequate response to the multiple requests for relief by the Plaintiff concerning the pest infestations, electrical and gas stove problems and other conditions to be knowing and willful. I find her behavior to constitute a knowing, willful, material and significant breach of the implied warranty of habitability as that concept is applied under G.L. c. 93A. Pursuant to G.L. c. 93A, § 9, the Court awards double damages, plus costs and attorneys' fees.

As such I rule that the fair rental value of the premises during the period of July 1, 2019 through September 30, 2019 to be 50% of the agreed upon rental value of $33,750.00 (92 days x $366.85) or $183.43 x 92 days = $16,875.56. As a result the Plaintiff would be due a refund of rental payments in the amount of $16,875.56.

Given the facts and evidence submitted by the Plaintiff, I find the Defendant violated of the warranty of habitability which I also find to be an unfair and deceptive practice and a violation of G.L. c. 93A. Accordingly, in exercise of the Courts discretion I award double damages based upon the above totaling **$33,751.12. ($16,875.56 x 2)**

5

**Security Deposit**

The Massachusetts security deposit statute, G.L. c. 186, §15B, imposes strict requirements that must be followed by every landlord who accepts a security deposit from a residential tenant. Based upon the evidence submitted by the Plaintiff, the Defendant apparently violated several provisions concerning the security deposit under Massachusetts. The Defendant failed to deposit and maintained the tenant's security deposit in compliance with the security deposit statute, G.L. c. 186, § 15B (3)(a). There was no statement of conditions provided in accordance with, G.L. c. 186, § 15B (2)(c). No return or sworn statement concerning any withholding within 30 days after the termination of the tenancy G.L. c. 186, § 15B (4). G.L. 186 s. 6(a)(b) and (e) provides in relevant part that a landlord,

> shall forfeit his right to retain any portion of the security deposit for any reason . . . if he . . .(a) fails to deposit such funds in an account as required under subsection (3); (b) fails to furnish the tenant within thirty days after the termination of the occupancy the itemized list of damages, if any, in compliance with the provisions of this section and (e) fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in accordance with the provisions of this section, within thirty days after termination of the tenancy.

Finally, Section 7 provides that if the landlord fails to comply with Section 6 (e), the tenant "**shall** be awarded damages in an amount equal to three times the amount of such security deposit *or balance thereof* (emphasis added) . . . plus interest at the rate of five percent from the date when such payment became due, together with court costs and reasonable attorney's fees." See, <u>Castenholz v. Caira</u>, 21 Mass.App.Ct. 758 (1986).

Based upon the evidence submitted, the Defendant's abject failure to properly collect, maintain or return the correct balance of the deposit within thirty days from the date the tenant vacated the premises constituted a violation of G.L. c. 186, § 15B.

For these reasons, in accordance with G.L. c. 186, § 15B (7) the tenant is entitled to recover as damages treble the amount of $2,500.00. Under the terms of the statute the trebling of the "balance thereof" is not discretionary. Accordingly, the court awards the tenant damages in the amount of **$7500.00** ($2,500.00 x 3) plus interest of $334.90 and attorney's fees of $6,770.00.

## ORDER FOR ASSESSMENT OF DAMAGES

Based upon all the credible testimony and evidence presented in light of the governing law, it is **ORDERED** that:

1. Judgment for the Plaintiff in the amount of **$33,751.12** for breach of the warranty of habitability;

2. Judgment for Plaintiff as to the Security Deposit of **$7,500.00 plus interest of $334.90 and Attorney's fees of $6,770.00**

**SO ORDERED**

*/s/ Joseph L. Michaud*

**JOSEPH L. MICHAUD**
**ASSOCIATE JUSTICE**

March 24, 2022

cc: Jenny L. Margeson, Esq.
     Katherine Flanders

Mailing List:  March 25, 2022                    Docket No.  20-CV-00275CI

Jenny L. Margeson, Esq.
434 Route 134
 Suite A2
South Dennis, MA 02660

Katherine Flanders
P.O. Box 1065
Pepperell, MA 01463